## BRANGER & DRIARD v. CHEVALIER.

It is not error in a Court to refuse to give to the jury an instruction which embraces a question which came properly before the Court, and not before the jury.

In a chancery case, it is doubtful whether the refusal to give instructions to the jury, even conceding them to be correct, can be assigned as error.

An account in writing, examined and signed by the parties, will be deemed a stated account, notwithstanding it contains the phrase "errors excepted."

Accounts stated may be opened, and the whole account taken *de novo*, for gross mistake, in some cases; but this can only be done when the gross error affects all the items of the transaction. When the clear mistake affects only a portion of the items of the stated account, it will be permitted to stand, except in so far as it can be impugned by the party alleging the error.

And when the party, who seeks to go behind the stated account, goes into particulars, and specifies the items improperly charged or omitted, he is confined to those items, and the remainder of the account must stand.

A plaintiff must be confined to the allegations in his complaint.

An order of reference cannot go beyond the pleadings of the parties.

When the referee excludes proper or admits improper evidence, or does any other act materially affecting the rights of either party, during the progress of the trial before him, then such party should except, and see that the exception is truly stated in the report.

But when the alleged error consists in the final conclusion of law or fact drawn from the testimony, and the evidence is certified to the Court by the referee, the proper course is to move to set aside the report, and for a new trial.

Where the affidavits used in support of a motion for a new trial are not set forth in the record on appeal, the party moving is deprived of all ground of error based on the affidavits; but the omission does not affect his right to raise the question as to errors apparent upon the face of the record.

APPEAL from the Superior Court of the City of San Francisco.

This was a bill in equity filed by the plaintiffs against the defendant for the purpose of having an account stated, signed by the plaintiffs and defendants, set aside on the ground of fraudulent concealment of facts and misrepresentations on the part of the defendant.

About the first of January, 1853, the plaintiffs and defendant entered into copartnership for the transaction of business in real estate, etc., which continued from that time until the 17th of May, 1855, when it was dissolved.

On the 31st of August, 1854, a mutual accounting was had of their copartnership affairs, and an account was stated and signed by the respective partners in triplicate, showing, at that time, a net balance, due by the plaintiffs to the defendant of $4,314 81.

On the 14th of October, 1854, the plaintiffs executed and delivered to the defendant a mortgage of certain real estate, to secure the payment of the aforesaid balance on settled account of $4,314 81, with interest thereon at one-half per cent. per month.

This mortgage is charged to have been given by the plaintiffs through mistake, and without just consideration.

The plaintiffs pray that the mortgage may be declared to be

void, and be delivered up to be canceled—that the defendant may be enjoined from proceeding to enforce it—that the stated account may be annulled, and an account taken *de novo* of the whole partnership business—that a judgment may be rendered against the defendant in the sum of $30,000, which is alleged to be the true balance due to the plaintiffs; and for other and further relief.

The answer admits the formation and duration of the partnership as alleged in the bill; and the settlement of accounts in August, 1854; also, the giving of the mortgage in October, 1854, and it sets forth another settlement which was had about the same time.

It denies specifically, all the fraud, concealment, and misrepresentation charged in the bill against the defendant.

It alleges that the stated account was settled and signed after due deliberation and with full knowledge, on the part of the plaintiffs of the true character of the several items contained in it, and that it is fair and correct.

Upon this state of the pleadings, the cause was called for trial; and a jury was empanneled and sworn, to whom certain issues, in the form of questions, were presented for their determination, as follows:

1. Is the settlement of accounts, signed by the parties on the 31st of August, 1854, founded on either mistake or fraud?

2. Is there a mistake in charging or crediting items in said account, so as to make a false or unfair account?

3. Was the mortgage from the plaintiffs to the defendant dated on the 14th day of October, 1854, given by mistake of facts on the part of the plaintiffs, or obtained by fraud or circumvention of the defendant?

4. Was it, or not, to secure the payment of a supposed balance due the defendant from plaintiffs?

The defendant asked the Court to charge the jury as follows:

1. That in cases of fraud the proof thereof must be positive.

2. Where each party is equally innocent, and there is no concealment of facts which the other has a right to know, and no surprise or imposition is proven, the mistake or ignorance, whether mutual or *unilateral*, will not entitle the plaintiff to a verdict.

Which charges, the judge refused to make, on the ground that they were "good as abstract law, but not relative to the issue."

To the first question, the jury answered that the settlement of accounts of the 31st of August, 1854, was founded on "mistake."

To the third, they answered that the mortgage was given by "mistake of facts."

And to the fourth, they answered the mortgage was given

to secure the balance of the accounts of the 31st of August, 1854.

After this verdict, the Court granted a decretal order, annulling the stated account, re-opening the whole matter, and referring it to E. D. Sawyer, Esq., to take and state an account of all the copartnership affairs between the parties, from the commencement to the close: and likewise enjoining the defendant from disposing of the mortgage or taking any steps to foreclose the same.

This decretal order was afterwards amended, so as to require the referee to find and report upon all issues raised by the pleadings, necessary for a just determination of the case.

On the 12th of June, 1856, the referee filed his report, in which he stated a balance, as due by the defendant to the plaintiffs, in the sum of $1,042 85.

The report of the referee was excepted to, but the exceptions were disallowed; a motion for a new trial was overruled, a final decree was granted, 15th Sept., 1856, and defendant appealed to this Court.

*N. Hubert* for Appellant.

Mr. Hubert filed a printed brief, discussing the facts of the case, at considerable length.

*Sloan & Hartman,* on behalf of the Appellant, made the following argument:

I contend that there is error in the decretal order, as far, at least, as it annuls the stated account of August, 1854, and directs the whole account to be taken and stated *de novo*—because:

First, it was not warranted by the pleadings; second it was not warranted by the verdict of the jury; third, it was not authorized by the facts and circumstances of the case.

1. If the bill makes a case for relief at all, as to the stated account, it cannot properly be extended beyond the right to surcharge and falsify.

The answer of the defendant sets up and insists upon the stated account, as if specially pleaded.

The bill, it is true, alleges fraud on the part of the defendant, and prays that the whole settlement may be annulled. But it is also true that it undertakes particularly to specify the various items which it is charged were improperly and erroneously entered there to the debit of the plaintiffs. And I insist that these items alone, if erroneous, should have been subjected to judicial investigation; that the account as stated should have been allowed to stand, with liberty to the plaintiffs to surcharge and falsify as to those particular items only, upon clear proof of mistake or error.

The rule is thus stated by a modern text writer:

"In some cases, where a stated account is impeached, the Court will re-open the whole, and direct it to be taken *de novo*. In others, where it is faulty in a less degree, it will allow it to stand, with liberty to falsify and surcharge. This leaves it in full force as a stated account, except so far as it could be impugned by the opposing party. If he shows the omission of a credit, that is a surcharge; if he shows the insertion of an improper charge, that is a falsification." Adam's Equity, marginal pp. 226, 227, (top pp. 428, 429.)

Where the charges in the bill are specific, setting forth the items of the account, with their dates, which are alleged to be erroneous, on a reference for an account, the inquiry is not open beyond the special matters charged, although the bill may contain a general charge at the conclusion, and a prayer for " a full account concerning the premises." Consequa *v.* Fanning, 3 J. Ch. R., 587.

2. The jury, by their verdict, negative the charges of fraud entirely. They only find that there was some mistake.

The doctrine that settled accounts shall not be set aside but for fraud, is as well established in Courts of Equity as that they shall not be surcharged or falsified but for error. Chambers *v.* Gladwin, 9 Ves., 265.

3. There are no facts or circumstances in the case which would seem to justify the Court below in annulling the settlement, and ordering the whole copartnership account to be taken *de novo*.

The decretal order was not warranted by the verdict.

The response of the jury, to the interrogatories of the Court, was, " that the mortgage was given by mistake of facts." Thus it will be seen that, by their verdict, they negative the charges of fraud entirely. They only find that there was some mistake.

The doctrine that settled accounts shall not be set aside but for fraud, is as well established in Courts of Equity, as that they shall not be surcharged or falsified but for error. Chambers *v.* Gladwin, 9 Ves., 265.

There are no facts or circumstances in the case which would seem to justify the Court below in annulling the settlement, and ordering the whole copartnership account to be taken *de novo*.

"I take it for granted," says Chancellor Kent, "that the order for a reference must be founded upon the pleadings and proofs, and that it cannot be made more extensive than the *allegatea* and *probatea* of the parties." Consequa *v.* Fanning, 3 J. Ch. R., 595.

I further contend that the stated account of the 31st of August, 1854, and which was afterwards solemnly ratified by the making and delivery of the mortgage, should have been permitted to stand wholly untouched; and that the reference should have been limited to a statement of the partnership affairs from that time until the dissolution of the firm.

The account of the 31st of August, 1854, was agreed to and signed by all the parties concerned; it was, therefore, a stated account, in the highest sense of the term.

But it is said by the respondents, that the words "errors and omissions excepted," were annexed to the account so signed by the parties.

If this were so, it could not have altered the rights of the respective parties, or impaired the legal efficacy of the settlement, without destroying it altogether.

It was, in fact and in law, a settlement, and was so intended to be. And the reservation of exceptions to any errors and omissions there might be, did not nor could not diminish its efficacy, nor add anything to the legal right of the parties to it.

The circumstance that a settled account was signed with the exception of errors, has been held to make no difference; "that being always implied in the settlement of an account." (See note of a case, under that of Taylor v. Haylin, 2 Bro. Ch. R., marginal p. 311,—top pp. 245, 246.)

The practice of opening accounts which have been adjusted by the parties themselves, who could best understand them, is not to be encouraged; and it should never be done upon an allegation of error supported by doubtful, or even probable testimony only, where no fraud has been practiced by one party on the other. Wilde v. Jenkins, 4 Paige, 495.

In the case of Chapdelaine v. Dechanaux, 4 Cranch, 309, the defendant interposed a stated account by a plea in bar to a similar bill. In pronouncing the opinion of the Court, Chief Justice Marshall said, "that the plea in bar must be sustained, except so far as it may be in the power of the 'plaintiff' to show clearly that errors have been committed, is a proposition about which no member of the Court has doubted for an instant. No practice could be more dangerous than that of opening accounts which the parties themselves have adjusted, on suggestion supported by doubtful, or by only probable testimony." If the referee had been limited to the pointing out of particular errors in the respective items mentioned in the bill, he would have been wholly unable to detect any.

Instead of that, however, the referee is ordered to go into the whole copartnership account, complicated as it undoubtedly was, and probably kept in such a manner as only to be clearly understood by the partners themselves. The result was as might have been expected, with all the care and skill the referee could bestow. And it is one which should never have been hazarded by the decree of the Court, except upon a clear case of fraud.

But where there has been no misrepresentation or concealment of facts, and each party has an equal opportunity of knowing all about the account, even if there be some mistakes, it furnishes no ground for relief. It is better that a settled account

should be allowed to remain so, than that unimportant errors, innocently made, should be subjected to expensive litigation. This principle is clearly laid down in the case of Belt v. Mehen, 2 Cal., 159.

That, like this, was an action to correct an alleged fraud and mistakes in the settlement of a partnership account. The Court below found that there had been a mistake but no fraud, and rendered a decree dismissing the complaint.

The referee did not report upon the matters submitted by the decretal order as amended. Under the former rules of practice, in such cases, it would not have been regular to refer to the master anything more than the taking and stating of the account. The Chancellor previously determined whether a proper case had been made; and usually settled the principles upon which it was to be taken.

Under our statute, I suppose it would be competent for the Court to refer the whole case. If that was properly done, the referee should have reported upon the issues so submitted, and pressed upon his consideration by the defendant's attorney.

On the other hand, if the Court was bound to determine first whether a proper case had been made for annulling the settlement and restating the whole account, and the Court sought information through the verdict of the jury, it is difficult to see upon what ground the Court refused to charge the jury as asked by the defendant.

They could not go into the account. They could only inform the conscience of the Court as to the question, whether there had been such fraudulent conduct on the part of the defendant as would justify the annulment of the stated account. This was necessarily, to some extent, a mixed question of law and fact; and in that view it is insisted that the charge was applicable and should have been given. So, if it was properly left to the jury to decide whether there has been any misapprehensions or mistakes, it was also proper that they should have been instructed touching the character of mistake or misapprehension which the law permits to be the subject of judicial investigation.

*P. W. Shepheard* for Respondent.

1. That although the *onus probandi* was on plaintiff to show error in the stated account of the thirty-first of August, 1854, and the defendant might have confined plaintiffs strictly to those errors proved alone, yet defendant by his own act, in consenting to the opening of the whole account, and submitting the same to the referee, is estopped from now claiming this to be error, for he cannot charge error in the Appellate Court, of which he did not avail himself in the Court below. Morgan v. Hugg, 5 Cal. R., 509; Davis v. Cayuga and Susquehanna R. R. Co., 10 How. P. R., 330.

2. That by consenting to the issues presented to the jury, as framed by the Court, defendant is estopped from charging error, in the refusal of the Judge to charge as prayed for by defendant, if the charge prayed for was not applicable particularly to those instructions.

3. That if there was error in the refusal of the Judge to charge the Jury as prayed for, yet defendant waived the same by consenting to open the account and submit to a reference on them.

4. That the report of the referree can only be set aside for fraud, or gross error of law or fact apparent on its face. Tyson v. Wells, 2 Cal. R., 122; Muldrow v. Norris, ib., 77; Porter v. Blandry, ib., 72; Goodrich et al. v. City of Marysville, 5 Cal. R., 430.

5. That although a motion was made in the Court below for a new trial, yet the statement was not settled by the Judge or referee, and not agreed to by counsel, nor are the affidavits and counter-affidavits made on said motion furnished by appellant to this Court. Linn v. Twist, 3 Cal. R., 89; Haley v. Young, 4 Cal. R., 284.

BURNETT, J., delivered the opinion of the Court—FIELD, J., concurring.

In January, 1853, the parties entered into partnership, and on the thirty-first of August, 1854, a stated account, in triplicate, was signed by them, from which it appeared that plaintiffs were indebted to the defendant in the sum of $4,315—to secure the payment of which, the plaintiffs executed to defendant a mortgage, dated and delivered the fourteenth of October, 1854. The partnership continued until May, 1855, when it was dissolved. In August, 1855, plaintiffs filed their bill against defendant, alleging that they were induced to sign the stated account, by the fraud and false representations of defendant, and that the account was fraudulent and false. They then specify certain items in the account as being incorrect, and pray that the stated account may be decreed to be null and void, and that an account may be taken of all the partnership transactions, and for general relief. The defendant answered, denying all fraud on his part, and all error in the stated account, and conceded that the Court might grant any proper relief for settling up the partnership transactions occurring since the date of the mortgage. In the Court below, the plaintiffs had a decree, from which the defendant appealed.

The first error assigned by the defendant is, that the Court erred in refusing to give certain instructions, offered by the defendant.

There were certain special questions prepared under the direction of the Court, and with the consent of the parties, which were submitted to the jury. Conceding these points to have

been correct, there was no error in refusing to give the second instruction asked for, as it had no relevancy to the question submitted to the jury.    This instruction embraced a question which came properly before the Court, and not before the jury.    The refusal to give the first instruction asked by defendant did not injure him, as the finding of the jury was in his favor upon the point embraced in it.    Even conceding that the instructions had been proper, it is matter of doubt whether the refusal to give them, in a chancery case, could be assigned as error.

The next point made by the defendant, which it is material to notice, is, that the Court erred in the decretal order, so far as it annulled the stated accounts, and directed an account to be taken of all the partnership transactions *de novo.*

In answer to this objection, the learned counsel for the plaintiffs insists that this error, if any, was waived by the consent of the parties that the stated account might be set aside.    If this consent had been given, it would seem to have amounted to a clear waiver of the objection.    But upon an examination of the record, we can not find sufficient evidence to sustain the ground taken by the plaintiffs' counsel.    It is true, that in the order appearing on page twenty-three of the record, and purporting to have been made on the twenty-ninth of October, 1855, it is left doubtful whether the consent was given to the questions submitted to the jury, or to the setting aside the stated account.    But this ambiguity is cleared up by the final decree, appearing on page fifty-four, wherein it is stated that " the following special issues having been prepared by the Court, with the consent and approval of the counsel of the respective parties," setting out the issues and the answers of the jury; and then proceeding to recite, " and in pursuance of said special verdict, the Court having by its interlocutory order, dated the twenty-seventh day of October, 1855, and by its further and amended interlocutory order, dated the sixth day of December, 1855, directed that the accounts stated between the said parties, dated the thirty-first day of August, 1854, should be opened and set aside."    The ambiguity is also removed by the interlocutory order signed by the Judge, and dated the twenty-seventh of October, 1855, appearing in the statement on page seventy-six of the record.    The consent of the defendant, if it so appeared, to the appointment of a particular person as referee, could not be construed as consenting to the order setting aside the stated account.

There can be no question as to the fact that the account of August 31, 1854, was a stated account, although the phrase " errors excepted " was added at the bottom.    "An account in writing, examined and signed by the parties, will be deemed a stated account, notwithstanding it contains the ordinary preliminary clause that errors are excepted."    (Story's E. J., § 526.)

In this case, though fraud was charged, the jury found only

mistake, and this was the ground upon which the decretal order of the Court was made.

In the case of Chambers v. Goldwin, (9 Ves. Jr., 264,) it was held by Lord Eldon that "accounts settled shall not be set aside but for fraud, or surcharged and falsified but for error." But in reference to accounts stated, the rule does not seem to be quite so strict. Accounts stated may be opened, and the whole account taken de novo, for gross mistake, in some cases. (Story's E. J., §523.) But this can only be done when the gross error affects all the items of the transaction. In case the clear mistake only affects a portion of the items of the stated account, it will be permitted to stand, except in so far as it can be impugned by the party alleging the error. And when the party who seeks to go behind the stated account, goes into particulars, and specifies the items improperly charged or omitted, he is confined to those items, and the remainder of the account must stand. (Story's E. J., § 523 ; Collyer on Part., § 573, note 5 ; Adams E., 227 and note ; 3 John. C. R., 587.)

In this case certain errors were specified in the complaint, and the plaintiff should have been confined to the items mentioned. The order of reference cannot go beyond the pleadings of the parties ; and then the mistake should be clear and material before the Court could allow the party even to surcharge and falsify. It is a very dangerous practice to go behind stated accounts, especially as between partners, who alone understand their complicated affairs, and the mode in which their books are kept. If all partnership books were well and carefully kept, upon the same system, then the practice of opening up accounts would not be so doubtful. (4 Cranch, 308 ; 4 Paige, 495.)

The bill in the case of Consequa v. Fanning (3 John. C. R., 587) was very similar to the complaint in this ; and it was there held that the inquiry could not extend beyond the items specified, although the bill prayed for a full account.

The counsel of defendant have specified certain alleged errors in the report of the referee. It appears that, after the settlement of the thirty-first August, 1854, one Chamon executed a mortgage to Chevalier, to secure the payment of $5,267 32, of which the referee states, in his report, (record, page 26,) that the sum of $1,538 43 belonged to the firm, while the statement, (record, page 308,) states that $3,728 87 of the sum of $5,267 32 belonged to the firm, and the remainder to Chevalier. By the terms of the mortgage, Chevalier was empowered to collect the rents of certain leased property belonging to Chamon, and to appropriate monthly $650 thereof, as follows : 1, interest to S. Moss ; 2, the interest on the $5,267 32 ; 3, the accruing rents ; 4, the taxes ; and, 5, the surplus, if any, to the extinguishment of the mortgage. As the agent of Chamon, Chevalier had collected the gross sum of $2,315, from which should be deducted whatever sum

Chevalier had paid out of it for Chamon to *others*, not including the firm; and then whatever net sum Chevalier received *for the firm*, should have been charged to him. To ascertain the sum collected and retained by Chevalier for the firm, the interest received on the $5,267 32 should have been apportioned between him and the firm, in proportion to the amount due to each. But, in the account of Driard and Branger with the firm, they are credited with several items, (on pages 205 and 207 of the record,) as having been received by Chevalier from Chamon, amounting in all to the sum of $2,561 48; and the same items are charged to Chevalier in his account with the firm, (record, pages 176 and 178.) From the account rendered by Chevalier as to the amounts collected by him of Chamon, there was only the sum of $1,244 remaining in his hands as the property of the firm; the other portion of the $2,315 having been paid to others, according to the terms of the mortgage. This sum of $1,244 was subject to distribution among the partners. Instead of which Chevalier is charged with a larger sum than the whole gross amount received by him from Chamon, and is not allowed any credits for payments made to others for Chamon. This would seem to be error. There may be some entry in some other portion of the accounts correcting this mistake, but we have been unable to find it, if there be such; and it has not been pointed out by the counsel on either side.

It is insisted by the counsel for plaintiffs that if there be error in the report of the referee, the defendant has not taken the proper method of bringing it before the Court. The testimony is contained in the report of the referee, and properly certified by him. When the referee excludes proper testimony, or admits improper evidence, or does any other act materially affecting the rights of either party during the progress of the trial before him, then such party should except, and see that the exception is truly stated in the report. But when the alleged error consists in the final conclusions of law or fact drawn from the testimony, and the evidence is certified to the Court by the referee, the proper course is to move to set aside the report, and for a new trial. This was done in this case. It is true that the statement on the motion for a new trial was not settled by the Judge. The statement was made by the attorney for defendant, and proposed amendments filed by the attorney of plaintiffs; and nothing further was done in reference to it, as appears from the record. In such a case the attorney of defendant must be held as consenting to the amendments, and both parties as agreeing to the statement as amended. It is also true that the affidavits used upon the hearing of the motion for a new trial are not set forth in the record. The only effect of this omission is to deprive the defendant of all ground of error based upon the affida-

vits; but the omission does not affect his right to raise the question as to errors apparent upon the face of the report itself.

There is nothing in the record to show what was the testimony before the jury; and we must presume that it was sufficient to warrant their conclusion that there was a mistake in the stated account of the thirty-first of August, 1854.

Our conclusion is, that the Court erred in setting aside the stated account and directing an account to be taken *de novo*. We also think that the report of the referee, in reference to transactions since the date of the mortgage, was erroneous in some particulars, and should have been set aside.

For these reasons the judgment is reversed, and the cause remanded for further proceedings.