CORNELIA AUSTIN, Appellant, *v.* MARGARET M. AHEARNE et al., Respondents.

Where, under an order of reference in a partition suit " to inquire and report," the referee reports correct findings of fact but erroneous conclusions of law thereon, upon the coming in of the report the Special Term is not required to send it back for correction, but may, without exceptions, or independent of them, draw the proper legal conclusions from the facts.

An attornment is a continuation of the existing lease upon the same conditions in all respects, simply putting another in the place of the original landlord. There is a new tenancy only when the terms and conditions of the original lease are departed from.

*It seems* that the common law of attornments, as applicable to lessees, is still in force in this State in the cases specified in the Revised Statutes. (1 R. S., 744, § 3.)

Where a lessee occupies under a lease from one tenant in common of the whole premises, paying the rent reserved to his lessor, he is not liable for use and occupation to another tenant in common to whom he has not attorned, and to whose occupation of his share of the estate he has never objected.

By attorning to the other tenant in common, with the consent of his lessor, his lease becomes valid as to the interests of both, and both are equally bound by the terms of the lease.

Defendant A. being in possession of certain premises in the city of New

York, claiming title thereto under assessment leases, leased them to various tenants. Subsequently A. acquired title to an undivided half of the fee. Plaintiff, who owned the other half, brought ejectment suits against the tenants and A. These were settled by an arrangement under which the tenants, by instruments in writing, executed, with the consent of A., and accepted by plaintiff, attorned to the latter for her interest in the premises. In an action of partition, *held*, if A. had no title when the leases were executed, upon her acquiring title they operated by way of estoppel to bind her interest ; that the effect of the subsequent transactions was to validate the leases as against plaintiff, and to give the lessees the full terms therein specified ; and that a judgment directing a sale of the premises, subject to the leases, was proper.

(Argued May 13, 1874; decided September term, 1874.)

APPEAL from a judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment of the Special Term.

This action was brought for the partition or sale of two lots of land in the city of New York.

The plaintiff and the defendant Ahearne were owners in fee of the premises, each owning one undivided half thereof. The plaintiff acquired her interest by two separate conveyances; one undivided quarter being conveyed to her October 2d, 1866, and another January 16th, 1869. The defendant Ahearne acquired her interest February 15th, 1866 ; she then claiming the whole premises, however, under alleged tax and assessment leases, and was in possession of the whole. She made four leases; one of these was held by defendant Wright, expiring August 1st, 1871 ; the second by defendant Spear, ending June 1st, 1872 ; the third by defendant Hickman, to expire September 4th, 1879 ; the fourth by defendant Colbert, to expire April 1st, 1880. Each of these leases was made before the plaintiff acquired any interest in the premises. The lessees, respectively, entered into possession under the leases and erected dwelling-houses on the portions of the lots respectively leased to them, and paid the reserved rents. They were in possession when this action was brought.

The plaintiff, in January, 1869, commenced four actions of ejectment against the defendants, to recover possession of her undivided half of the premises.

On March 11th, 1869, the defendants Wright and Spear, with the written assent of the defendant Ahearne, attorned to the plaintiff for her undivided interest, on waiver of costs and damages. Thereupon the actions of ejectment against these parties were by consent discontinued. On March 29th, 1867, the defendant Hickman attorned to the plaintiff, under the statute (judgment in the action of ejectment having been recovered against him), and with the consent of Ahearne. Judgment in the ejectment suit was recovered against Colbert, and the plaintiff was put into possession by the sheriff on April twenty-third of the same year. There had been a previous attornment by Colbert to the plaintiff (March eighth), after the time to answer had expired and before judgment.

In May, 1869, the present action for partition was commenced. The plaintiff alleged her title as tenant in common with Ahearne, setting forth that each was in possession of her undivided half part. The defendants Wright, Spear, Colbert and Ahearne answered separately. Each contested the plaintiff's title and possession and set up title in themselves, under the tax and assessment sales. Hickman did not answer.

On November twenty-third an order was entered by consent that the issues in the action be referred to a referee to hear and determine the issues therein, to report upon the plaintiff's title and that of the several parties, and to make an abstract thereof; to inquire and report whether the whole premises, or any lot or separate parcel, were so circumstanced that an actual partition cannot be made; and if he arrive at the conclusion that the sale of the whole premises or of any separate lot is necessary, that he specify the same in his report, with the reasons which render a sale necessary. There was also a direction that he should ascertain and report whether any creditor had a specific lien on the undivided share of any of the parties in that portion of the premises necessary to be sold, or any lien, and the amount due upon each.

The referee found that the plaintiff was owner in fee of

one undivided half of the premises as tenant in common with the defendant Ahearne, and was in possession of it subject to certain liens for taxes and assessments, and that the tenants, Spear, Wright, Colbert and Hickman, held her half without any agreement as to time or rent.

He further found that the defendant Ahearne was owner in fee and was in possession of the other half of the premises subject to taxes and assessments and liens for sales, and subject also to the lien and unexpired terms of the leases to the defendants Wright, Spear, Colbert and Hickman. He found the value of the unexpired terms and charged the payment of it on the share of Ahearne.

He also found that the last named leases were made by Ahearne under a claim of certain assessment leases from the city, but that no proof of these assessment leases was made before him.

He further found that partition could not be made because of the numerous outstanding leases made and executed by the mayor, etc., of New York, to different persons for unpaid taxes and assessments, and because of the impossibility of determining their value in order to make compensation, the premises consisting of two irregular lots.

Exceptions were taken to the report by Ahearne, Colbert, Spear and Wright, but none were taken by the plaintiff.

In May, 1871, the court, at Special Term, on hearing the exceptions to that part of the report which held that partition could not be made, overruled them, and held that a sale was necessary, and modified the report of the referee as to the rights of the tenants, finding, in substance, as follows:

1. That the plaintiff is the owner, and seized of one undivided half of the parcels of land in litigation, subject to the taxes, assessments, corporation leases and tenants' leases.

2. That the defendant Ahearne is the owner, and seized of the other half of the premises, subject to the same incumbrances and leases.

3. That the defendants Hickman, Colbert, Spear and Wright, are tenants residing on the lands, and are owners of

the leases both by virtue of the corporation leases granted to the defendant Ahearne, and by virtue of her ownership of one-half the fee.

4. That by reason of the undetermined validity and value of the corporation leases and of the tenants' leases and of the large amount of unpaid and unapportioned taxes and assessments upon parcels of the land, it is impracticable to make partition of the parcels of lands between the parties owning the fee, or to sell the same otherwise than subject to the said taxes, assessments, corporation leases and tenant leases.

It was adjudged that a sale take place according to these conclusions, and that the referee pay out of the net proceeds of sale one-half part to the defendant Ahearne ; and that the share of the plaintiff be charged with one-half of all the costs of the tenants under the Ahearne leases.

*Samuel Hand* for the appellant. The decision of the referee was final, and could only be reviewed on appeal at General Term. (Code, §§ 268, 272 ; *Dana* v. *Howe,* 3 Kern., 306 ; *Watson* v. *Scriven,* 7 How., 9, 11 ; *Conolly* v. *Conolly,* 16 id., 224 ; *Cheeseborough* v. *Agate,* 26 Barb., 603 ; 3 Wait's Pr., 321 ; *Danbery* v. *Coghlan,* 12 Sim., 507 ; 2 Dan. Ch. Pr., 1319 ; 1 Barb. Ch. Pr., 560.) The referee was right in holding that the leases by Ahearne to the other defendants were void as to the plaintiff. (*Striker* v. *Kelly,* 2 Den., 323 ; *Westbrook* v. *Willey,* 47 N. Y., 460 ; *Cruger* v. *Dougherty,* 43 id., 121, 122 ; *Whiting* v. *Thomas,* 23 id., 285 ; *Doughty* v. *Hope,* 1 Comst., 79 ; *Nicoll* v. *Fash,* 59 Barb., 275 ; *Sanders* v. *Leary,* 38 id., 70 ; *Stevens* v. *Palmer,* 10 Bosw., 60 ; *Sharp* v. *Spier,* 4 Hill, 76 ; 1 Greenl. on Ev., §§ 493, 495, 498.) Defendants are precluded by the judgments in ejectment from maintaining the right to hold against plaintiff. (*Van Allen* v. *Rogers,* 1 J. Cas., 281.) Neither the attornments nor the receipt of rent from Wright and Ahearne, by plaintiff's agent, can be held to subject her interest to the long lease given by Ahearne. (1 R. S., 744, § 3 ; *Florence* v. *Hopkins,* 46 N. Y., 182 ; *Doe* v. *Noden,* 2 Esp., 530 ;

*Bryan* v. *Burgh*, 4 B. & Ald., 401; *Doe* v. *Butcher*, 1 Doug., 50; *Little* v. *Martin*, 3 Wend., 219; *Anderson* v. *Prindle*, 23 id., 616; *Jackson* v. *Salmon*, 4 id., 327; *Digby* v. *Atkinson*, 4 Campb., 275; *Jenkins* v. *Church*, Cowp., 482; *Doe* v. *Collinge*, 6 C. B., 939; *Webber* v. *Shearman*, 3 Hill, 547; *Van Brunt* v. *Pope*, 6 Abb. [N. S.], 217; *Glover* v. *Wilson*, 2 Barb., 266; *Pierce* v. *Pierce*, 25 id., 243; *Croswell* v. *Crane*, 7 id., 191.) The subsequent acquiring title by Ahearne to the fee of an undivided half of the premises leased by her, did not enlarge the interest of the lessee. (Taylor L. and T., § 114.)

*A. P. Ketchum* and *M. Ahearne* for the respondents. The question of the mode of sale on actual partition, rested in the discretion of the court. (*Haywood* v. *Judson*, 4 Barb., 229; *Van Aredale* v. *Drake*, 2 id., 599; *Smith* v. *Smith*, 10 Paige, 470; *Clason* v. *Clason*, 6 id., 541; *Vermilyea* v. *Palmer*, 52 N. Y., 471; *Warfield* v. *Crane*, 4 Keyes, 448.) The modification of the referee's report, made at Special Term, was within the power of the court. (*Woodworth* v. *Campbell*, 5 Paige, 518.) Partition between tenants in common of real property is a matter of right. (10 Paige, 470.) The possession of one tenant in common is presumed to be in support of the common title. (3 Alb. L. J., 16.)

DWIGHT, C. The appellant objects in this cause that as the reference was to hear and determine the issues in the action, the referee's decision was that of the court, and could not be reviewed or in any way affected by the court at Special Term, but only by appeal to the General Term.

Taking the order of reference as a whole, it is plain that it was not intended as a reference of the whole issue, but rather as the one resorted to under the old practice through the medium of a master in chancery. The referee was directed in the order to *inquire and report* as to the sale of the premises and the reasons which, in his judgment, make it necessary, and as to liens in favor of persons not parties to the action as well as of these who were parties, etc. The terms

"inquire and report" have long been used in England and in this country as a formula for a reference to a master in chancery to obtain and report information to the court. The parties and the referee in the present case, treated it as belonging to that class of references. The objection is not, under the circumstances, available in this court.

The next objection is that the Special Term had no power to review and set aside the conclusions of law of the referee and make new findings and conclusions. It is claimed that the conclusions should be sent back to the referee for correction. This objection leads to the consideration of the power of an equity judge over the report of a master in chancery, to whose functions the duty of a referee " to inquire and report " is analogous. A master is sometimes said to be the " right arm of the court." He is its instrument for collecting evidence and reporting conclusions for the use of the court. His main duty is to report facts derived from the evidence submitted to him, and if he draws legal conclusions from the facts, he performs a function more germane to the duties of the judge. A distinction may be taken between the case where a master should go counter to the evidence, and thus deprive a party of a right by finding facts without sufficient warrant, and the case where he states all his facts correctly, but is mistaken in the legal consequences of the facts. In the first case it is proper that the report should be sent back for correction. In the second case the court may draw the legal conclusions without exceptions, or independent of them. The point is clearly stated in 2 Daniells' Chancery Practice, 1314 (Perkins' ed., 1865). He says: " Where the master, by his report, states all the facts correctly, but is mistaken as to the legal consequences of those facts, it is not necessary for the party dissatisfied with the master's finding to except to the report, as the question decided by the master may be opened upon further directions without exceptions." (Citing *Adams* v. *Claxton,* 6 Ves., 226; *Branger* v. *Chevalier,* 9 Cal., 353.) It has been held in the same spirit that where facts are so clearly stated as necessarily to involve a particular con-

sequence, it is for the court to act upon the facts so reported. (*Bick* v. *Motly*, 2 M. & K., 312.) Mr. Smith states the rule in the following language: "If all the circumstances appear *on the face of the report*, a question decided by the master may be opened on further directions without any exceptions having been taken." (2 Chan. Pr., 402.) In *Adams* v. *Claxton* (*supra*), on which these text books rely, the question arose in consequence of a reference to a master to inquire to whom a policy of insurance upon the life of one Wood belonged. The report stated all the circumstances, and the master drew a certain conclusion as to the ownership. No exception was taken to the report, but the master of the rolls, Sir WILLIAM GRANT, said that the whole matter appears upon the face of the report, and that, therefore, it was open to inquire whether the master was right, and having made that inquiry, he determined that the conclusion was wrong. The Code of Procedure agrees with this rule in providing that a reference to report the facts is equivalent to a special verdict (§ 272), at the same time, in section 260, defining a special verdict to be one where the jury find the facts only, leaving the judgment to the court.

If, therefore, the court at Special Term simply modified the report of the referee as to his conclusions of law, no exception was necessary, nor was it essential to send the report back for correction.

It is thus necessary to consider the respects in which the report was modified. Those of which complaint is made, are that while the referee held the leases made by Ahearne to the other defendants were void as to the plaintiff, and that her interest was not subject thereto, the court at Special Term held otherwise, and ordered a sale and division of the property subject to the Ahearne leases as if they were binding against the plaintiff.

It is argued in opposition to this view that as Ahearne, when the leases to the other defendants were made, claimed under leases from the city, upon sales for unpaid taxes and assessments, and that as no proof was made of the existence and validity of these leases, they were wholly inoperative as

against the plaintiff. It is further affirmed that even if they were proved, there was no evidence to show that the statutory provisions in regard to assessment and sale were complied with, and that as there is no presumption in favor of the regularity or existence of the preliminaries required by law, they must be proved affirmatively.

All this may be conceded without disposing of the question : grant that Ahearne had no title when the leases were given, Ahearne became owner of half the fee on February 16th, 1866, claiming the whole by the city leases, with no one to dispute his possession. The leases then operated by way of estoppel to bind her interest. (Burton on Real Property, § 850; *Bank of Utica* v. *Mersereau*, 3 Barb. Ch., 528; Wms. Real Property, 329; 1 Wash. Real Property, 399, parag. 6 [3d ed.].)

The leases not only applied to Ahearne's undivided half of the estate, but as long as her co-tenant, predecessor of the plaintiff, did not object, extended over the entire premises. (*Badger* v. *Holmes*, 6 Gray, 118.) In that case one tenant in common had leased to a stranger the entire estate ; the rent being made payable to the lessor. The court said that the lessee of one tenant in common does not by occupying the whole estate make himself liable for use and occupation to another tenant in common to whom he has not attorned and to whose occupation of his share of the estate he has never objected. The fact that one tenant is in full possession of itself does no harm to another, each being seized of each and every part of the land, has a right to the enjoyment of it, so long as he does not hold the other tenant out, or deprive him of the occupation of the estate.

When the plaintiff acquired from the co-tenant of Ahearne her undivided quarter, October 2, 1866, she occupied the same position as her grantor, and the same remark is, of course, applicable to the augmentation of her interest on January 16, 1869.

It is now necessary to consider the effect of the attornments of March 19 and 29, 1869.

The plaintiff was then the owner in fee of an undivided half of the estate. If the corporation leases were void, she might have repudiated the leases to the defendants Wright, Spear, Hickman and Colbert. Instead of doing this, Wright and Spear attorned, with the consent of the defendant Ahearne; and the defendant Hickman attorned after judgment in an action of ejectment brought by plaintiff. The attornment of Spear and Wright, of March nineteenth, set forth that they did hereby attorn to Cornelia Austin (plaintiff), and become her tenants for the undivided half of the lots in litigation. The consent of Ahearne, of the same date, recited that she was landlord of the above mentioned premises, and consented to an attornment, as above, to the plaintiff, on condition of the discontinuance of the actions pending against Spear and Wright. The plaintiff, by an instrument in writing, subscribed by her under date of March twenty-seventh, consented *to the form and terms* of the attornment. In the case of Hickman, there was a statement, under date of March twenty-ninth, that, under and "in pursuance of the annexed judgment and writ of possession," he did attorn to the plaintiff, and become her tenant for an undivided half of the premises leased by him from Ahearne.

The effect of an attornment has been most clearly stated by HOLROYD, J., in *Cornish* v. *Searell* (8 B. & C., 471). He there points out the distinction between an attornment and a new tenancy. He says: "Where the original landlord parts with his estate, and transfers it to another, and the tenant consents to hold of that other, the tenant is said to attorn to the new landlord. The attornment is the act of the tenant putting a person in the place of another as his landlord. The tenant who has attorned continues *to hold upon the same terms* as he held of his former landlord. But, in the present case, the agreement is for a new tenancy, and *is for a time, and upon conditions which may vary* from those in the former lease, according to the agreement of the parties. I think, therefore, that this instrument was an agreement, and not a mere attornment." LITTLEDALE, J., expressed the same

view. ·This distinction was adopted and acted upon in *Doe* v. *Edwards* (5 Ad. & El., 95, 103); *Doe* v. *Boulter* (6 id., 675); *Doe* v. *Smith* (8 id., 255).

It is not necessary, though judicious, that the agreement to attorn should express any payment of rent. (Coke, Littleton, 310, *b*.) There are five forms of attornment given by Littleton, and the present is one of them.

The attornment in the case of Hickman was equally valid with the others. The form there pursued is, in substance, that which was adopted in *Doe* v. *Boulter* (*supra*), and in *Doe* v. *Smith* (*supra*). In *Doe* v. *Boulter*, after the plaintiff had recovered in ejectment, the tenant attorned to prevent a writ of execution from being issued against him. So in *Doe* v. *Smith*, one T. who had brought ejectment and recovered, and forbore to take possession at tenant's request, died. The tenant subsequently signed an agreement that he attorned, as tenant, to the devisee of T. The attornment was entitled in the action in the King's Bench, and recited the recovery of the judgment. The court said this was an attornment, and not an agreement for a lease. " One circumstance alone raises some doubt : The landlord, the devisor, had recovered in ejectment against Smith, the present defendant, so that his attornment to the devisee had the appearance of accepting a new title under a new party. But, taking the view that common sense points out, I think that is not so. The former landlord had claimed a right to eject Smith, but had not availed himself of that right. He afterward died, having devised to Miss G. Taylor, and to her Smith made an acknowledgment, in the nature of an attornment."

I think that the effect of the transactions in the case at bar was, to give to the lessees the same term which they had under the lease from Ahearne. Such a construction is the most beneficial to the lessees; otherwise, they would hold the one-half which they acquired from Ahearne on entirely different terms from the one-half in respect to which they attorned to the plaintiff, and would be liable anew, of course, to be ejected from that portion. It can hardly be supposed

that they would adjust the controversy between them on such terms; or that Ahearne would consent to such a settlement, as she would still be liable on the covenants in her leases. So, the use of the word "attornment" having a settled legal meaning, and the plaintiff's consent having been executed in her behalf by an attorney at law, it must be supposed that the parties intended to adopt all the implications which the word carries with it.

Mr. Taylor, in his work on Landlord and Tenant, appears to have misapprehended the effect of *Cornish* v. *Searell* (*supra*), and the other cases cited. He says: "After an attornment, the tenant continues to hold under the same terms as he held under his former landlord, but only as a tenant from year to year, unless it is expressly agreed that he shall continue for the same term. In such cases, however, the instrument of attornment is no longer such, but, in fact, becomes an agreement for a new tenancy." (Sec. 440.) According to this view, an attornment never can amount to a continuance of the original tenancy. If there be no express agreement, then the tenancy, according to this exposition, is from year to year; if there be, there is a new tenancy. This flies in the face of *Cornish* v. *Searell*, which is to the effect that the attornment is a mere recognition of the existing tenancy, the whole case showing that the words the "same terms" mean the *same conditions in all respects*, and not merely the same rent, etc.; and that there is only a new tenancy when the time and conditions in the original lease are departed from. *Cornish* v. *Searell* also clearly holds that an attornment is a continuation of the existing lease, unless there is some evidence to the contrary.

When the attornments were made, the leases took effect so as to make them valid from the beginning, as far as the interest of the plaintiff is concerned, but not so as to prejudice the rights of the tenant. It is said by Coke, in his Commentary on Littleton: "Where a man makes a feoffment of a manor the services of the tenants do not pass, but remain in the feoffor until the freeholders attorn, but when they do

attorn, the attornment has relation to the feoffment. For, albeit the attornment be made many years after the feoffment, yet it shall have relation to make the services pass out of the feoffor *ab initio*, even by the livery upon the feoffment, but not to charge the tenant for any *mesne* arrearages, or for waste in the mean time, and the like." (Coke on Litt., 310, *b*, § 553.) On this principle, if a grant, to which attornment was applicable, was made to an alien, who subsequently, and before attornment, became a citizen, the attornment vested the title in him, as of the time when he was an alien, and the land escheated to the king on office found. Light may be shed upon this subject by considering the subject of attornment as applicable to cases where a tenant without such attornment might be regarded as a trespasser. Leading instances of this kind may be drawn from the law of mortgages. One is the case of a lease made by the mortgagor subsequent to the mortgage. It is conceded, on all hands, that such a lessee is in no privity with the mortgagor. He may, in the absence of statutory provisions, be treated by the mortgagee as a trespasser. So, on the other hand, the mortgagee cannot require him to pay rent. These propositions are elementary law. Let an attornment take place, let the mortgagee threaten eviction, and let the tenant attorn to him, there springs up at once between the parties the relation of landlord and tenant. If the attornment be unqualified, it puts the tenant in the same relation to the mortgagee which he held to the mortgagor. Under the doctrine already referred to, that the attornment relates back to the time of the grant, it follows, according to some authorities, that all the rents due from the tenant (and not actually paid over to the mortgagor), belong, after attornment, to the mortgagee. (Per BAYLEY, J., in *Pope* v. *Biggs*, 9 B. & C., 252; remarks were made by LITTLEDALE, J., on page 254 of the same case, to the same effect.) In *Kimball* v. *Smith* (6 R. I., 138, 140), it was held that the tenants of the mortgagor, by attornment, became tenants of the mortgagee. The court said that an attornment is nothing more than the consent of the tenant to

a new lord (Coke on Litt., 309, *a*) ; and the tenants in this case, by promising to pay, and by actually paying the rent to the mortgagee, attorned to and became tenants to him. The same view prevailed in *Jones* v. *Clark* (20 J. R., 52), where the subject of attornment by tenant of the mortgagor to the mortgagee is considered at length.

In these cases there can be no attornment without the consent of the mortgagee, unless the tenant is threatened with an eviction, on account of the general rule that the tenant is not to dispute the title of the landlord. (*Alchorne* v. *Gomme*, 2 Bing., 54.)

Where a tenant, under proper circumstances, attorns to one having a superior title, he is in the same position as if he had gone out of possession, and had come in again under the new landlord. It would be a useless ceremony to go through the form of going out and coming back. (*Morton* v. *Woods*, L. R. [3 Q. B.], 671, 672.)

How large an interest the tenant obtains is simply a question depending on the intent of the parties. The true ground of the whole theory of attornment in such cases is estoppel. Whether a tenant enters into possession under a landlord, or continues in a possession derived from a former proprietor, is immaterial. BLACKBURN, J., explains the whole subject on the theory of an estoppel in the case last cited. He says: "If it is agreed that one shall be tenant to another, both are estopped from disputing the other's title. * * * The estoppel is the same where there is a continuation of occupation, as if there be a change of possession and a new letting." (P. 670.)

Similar illustrations may be drawn from the relation of mortgagor and mortgagee under the English practice. A clause of attornment is now usual in England to create between a mortgagor and mortgagee the relation of landlord and tenant. In the absence of an attornment, the mortgagor in possession is in no respect a tenant. He may be treated as a trespasser, and put out of possession. (*Jolly* v. *Arbuthnot*, 4 De Gex & Jones, 236.) The mortgagor may attorn either through a clause in the mortgage deed, or by a separate and

subsequent agreement. By such an attornment he becomes a tenant to the mortgagee. (*West* v. *Fritche*, 3 Exch., 216.) The word " attorn " is regularly employed in this class of cases. The attornment at once constitutes the relation of landlord and tenant. The length of the term depends on the fair construction of the instrument. A recognition of the existing lease without qualifying words simply adopts it. On the other hand, if there be any qualification, effect must be given to it according to rules usually prevailing in the construction of written instruments. (*Morton* v. *Woods*, *supra*, and in the Exchequer Chamber L. R. [4 Q. B.], 293.) The mortgagor in that case attorned for ten years, with a provision that the mortgagee might, at any time, enter and eject him. The court held that an attornment for ten years would have made him a tenant for that time, on the ground of mutual estoppels, had it not been for the proviso. In construing that in connection with the attornment, he became a tenant at will. Mr. Coote, in his treatise on mortgages, states the rule as to an attornment between the tenant (of a mortgagor, subsequent to the mortgage) threatened with an eviction and the mortgagee, as follows: " The mortgagee may annul the lease, or he may *confirm the tenancy. Any act demonstrating approbation of the demise will be evidence of confirmation.*" (P. 410.) It is elementary law that a " confirmation " operates on the entire interest previously granted, and makes it valid, and Mr. Coote undoubtedly meant to be understood as affirming that the act " demonstrating approbation of the demise " would be a recognition, in all its parts, of the existing lease, on the part of the mortgagor. These cases and authorities are strongly confirmatory of the views herein taken of the case at bar, since the lessee of the mortgagor and the mortgagor himself, in English law, are as clearly, in the absence of an attornment, " strangers " to the mortgagee, as were the tenants of Ahearne to the plaintiff.

This branch of the law is still in existence in this State, and the decisions referred to are to be followed, except so far as modified by statute. The Revised Statutes provide that the

attornment of a tenant to a stranger shall be absolutely void, and shall not, in any wise, affect the possession of the landlord, unless it be made (1), with the consent of the landlord; (2), pursuant to, or in consequence of, a judgment at law, or the order or decree of a court of equity; (3), to a mortgagee, after the mortgage has become forfeited." (1 R. S., 745, § 3.) This statute plainly implies that the common law of attornments, as applicable to lessees, is still in force as to the cases specified, and two of these exist in the present action. (*Jones* v. *Clark*, 20 J. R., 51, 62, where the law of attornments, as now existing, was much considered; *Jackson* v. *Brush*, id., 5, where an attornment was made to a third person, with the consent of the landlord, and held valid under the statute.)·

The result is, that the interest of the plaintiff is subject to the leases, in respect to which the attornment was made, and that the court below committed no error in ordering a sale subject to them.

None of the authorities cited by the appellant, on the argument, affect this conclusion. They were not cases in which the law of attornment was in issue, and need not be specially noticed. The present case only calls for a decision as to the precise point involved as between tenants in common. What is said in this opinion concerning the general law of attornment of a tenant to strangers is referred to by way of argument and illustration.

The court below, for the reasons already given, committed no error in making the costs of the tenants, and of the defendant Ahearne, a charge upon the plaintiff's interest in the premises. The whole subject being properly at Special Term, as a matter of original jurisdiction, and the cause being equitable in its nature, the costs were in the discretion of the court.

A word should be added as to the corporation leases. Their validity is not affirmed by the judgment in this case. We do not understand that this question was passed upon in the court below. The sale must be made subject to the

apparent existence of these leases, and without prejudice to the right of a purchaser to contest their validity.

The judgment should be affirmed.

All concur.

Judgment affirmed.