MONTDALE HOLDING CORPORATION, Plaintiff, *v.* JACOB M. KAPLAN, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, September 30, 1930.

*Monte London* [*Reuben R. Rubinstein* of counsel], for the plaintiff.

*Jay Leo Rothschild* [*Louis Rivkin* of counsel], for the defendant.

GENUNG, J. This is an action for rent in the sum of $666.67 for the month of October, 1929, covering a penthouse apartment in the building No. 239 Central Park West, New York city. The defendant interposed a general denial. Subsequently plaintiff made a motion for summary judgment under rule 113 of the Rules of Civil Practice. On the argument of the motion it was agreed by both parties to submit the entire case upon an agreed statement of facts, which was duly filed.

The defendant was in possession under a lease executed on March 26, 1927, between a former owner of the property, Paul F. Crosney, Inc., and the defendant, for a period of three years, from October 1, 1927, to September 30, 1930, at an annual rental of $8,000. The defendant paid $16,000, representing the entire rent for the first two years of the lease, in advance at the time of the execution of the lease. The rent for the remaining year of the term was to be paid in equal monthly payments of $666.67.

After the execution of the lease and such advance payment of rent an action was commenced on June 22, 1927, in the Supreme Court, New York county, to foreclose a prior existing mortgage on the premises. This defendant was made a party defendant to the foreclosure action. He asserted his equities in that action arising out of the advance payment of rent.

The judgment of foreclosure, while it provided that the defendant's lease was subject and subordinate to the lien of the mortgage, nevertheless further provided that the foreclosure of all liens subsequent to the mortgage should not be deemed to affect the " tenancy of the defendant Kaplan under his lease dated March 26, 1927, for the period of two years commencing October 1, 1927, and ending September 30, 1929." The conclusions of law in the decision accompanying the judgment of foreclosure and sale also stated that the lien of the defendant's lease dated March 26, 1927, " for a period ending September 30, 1929, shall be saved from the sale of the premises, and that the sale of the premises shall be subject thereto."

Plaintiff derived its title from the purchaser at the foreclosure sale pursuant to the said judgment. In September, 1929, the defendant vacated the premises at the conclusion of the two-year period for which he had paid rent in advance, and for which he was protected by the judgment in the foreclosure suit. Plaintiff brings this action for the rent of October, 1929, the first month of the third year of the original term of such lease, upon the theory that the said lease is in full force and effect for the remaining year of the original term, and also for the additional term of two years commencing October 1, 1930, because of the exercise by the defendant of an option reserved to him in such lease for such renewal.

The plaintiff's claim is predicated upon a letter which was written by the defendant to the plaintiff's agent on February 27, 1929, reading as follows:

" This is to notify you of my intention to exercise and I do hereby exercise the option of renewal contained in the lease between Paul F. Crosney, Inc., and Jacob M. Kaplan, dated March 26, 1927, pertaining to the roof apartment which I occupy in the premises at No. 239 Central Park West, New York City. I also hereby notify you that I elect to renew that lease upon the same terms and conditions as are set forth in said lease for an additional period of two years, from October 1, 1930, until September 30, 1932. Kindly acknowledge receipt of this letter and oblige.

" Yours faithfully.

" (Signed) J. M. KAPLAN."

The plaintiff never acknowledged the receipt of this letter or indicated in any way its acquiescence in the proposition outlined

by the defendant prior to August 29, 1929, when the defendant wrote a letter of withdrawal. It contends, however, that the defendant's lease was expressly saved from foreclosure for the term of two years by the very provisions of the judgment in foreclosure; that such continued tenure of the defendant after the judgment necessarily carried with it all of the tenant's rights provided for in the lease; that the option of renewal was one of those rights; that the defendant duly exercised such right by this letter before the expiration of such two years, and that under the authorities the exercise of an option provided for in a lease in favor of a tenant consummates the renewal without any further act or acknowledgment on the part of the landlord. (*Orr* v. *Doubleday, Page & Co.*, 223 N. Y. 334.)

This court construes the said decision and judgment in the foreclosure action to mean that the court preserved the defendant's right to remain in possession and enjoyment of his premises under the terms and provisions of his lease as a lien superior to that of the mortgage, but only for the two years ending September 30, 1929, for which he had paid rent in advance, and foreclosed him of all right, title or interest under the said lease with respect to the balance of the term of such lease. Plaintiff in its briefs has itself construed the decision and judgment in the foreclosure suit as meaning that the lease has not been canceled, but that merely the term of the lease is modified and shortened.

It follows as a consequence and effect of the foreclosure judgment that the provision in the lease for the extension of the original term, by the exercise of the tenant's option, has been wiped out. Assuming that this option had been exercised before the foreclosure action was commenced, it cannot be doubted that the extended term under such option would have been foreclosed, together with the remaining portion of the original term beyond the two years that were saved from the operation of the foreclosure judgment. The bare option itself cannot be deemed to have any greater power of survival after the judgment of foreclosure than an extension previously consummated by the tenant's exercise thereof. Therefore, the defendant's letter of February 27, 1929, was in effect an offer not to exercise an existing option to renew, for such option no longer existed, but to revive a right which had been previously extinguished by a judgment of the Supreme Court; or, in effect, an offer to make a new lease for a period of two years, upon the same terms and conditions as in the prior lease.

Such an offer required acceptance on the part of the plaintiff in order to validate it as a contract. The plaintiff failed to accept this offer, and on August 29, 1929, before there had been any

such acceptance, the defendant wrote to the plaintiff expressly withdrawing his offer to renew or extend the lease, and gave notice that he would vacate the premises at the end of the period for which he was entitled to possession under the terms of the foreclosure judgment. Thereupon the plaintiff replied, on September 13, 1929: "We intend to hold you under the lease. You took advantage of the option given to you in the lease and extended your lease. This was exclusively optional with you, and once you exercised the option you are bound by it."

This did not constitute acceptance of an existing offer.

In addition to the plaintiff's claim that there has been an extension of the lease for a period of two years from October 1, 1930, by virtue of the defendant's letter of February 27, 1929, the plaintiff urges as a basis for the recovery of rent in this action for a portion of the year commencing October 1, 1929, and intervening between the two-year period which was "saved" to the defendant as a superior lien by the Supreme Court judgment of foreclosure and such two-year renewal period, that there has been an attornment by the defendant to this plaintiff.

The attornment which is claimed to exist in this case does not consist of payment of rent to this landlord, since, concededly, no rent was ever paid by the defendant to the plaintiff in this action, and the defendant removed from the premises before any further rent became due under the original lease. It is claimed to arise from the defendant's repeated recognition of the plaintiff as his landlord in extended correspondence which took place between the parties. This correspondence, like the defendant's letter of February 27, 1929, evidences that for a substantial length of time after the judgment in foreclosure was rendered, and before the expiration of the two-year period ending September 30, 1929, the defendant was not only willing to recognize the plaintiff as his landlord of the premises occupied by him, but was willing also to continue such tenancy for an extended term.

However, nothing has been shown from the plaintiff's side of the correspondence prior to the defendant's withdrawal of his offer to indicate a reciprocal willingness on the part of the plaintiff to recognize the defendant as its tenant beyond the term for which the defendant's possession and rights under his lease were assured to him by the judgment of the Supreme Court as a lien on the premises superior to the rights of the purchaser at the foreclosure sale. While the defendant was in possession by virtue of such superior lien it necessarily followed that the relationship of landlord and tenant existed between the plaintiff and the defendant by compulsion of the judgment of the court. Each of them was entitled

to his full rights and privileges as fixed by the term of the lease, but only during the shortened period of time as determined by the said judgment. Any extension of such rights beyond that period of two years was entirely dependent upon the mutual consent of the plaintiff and the defendant.

The plaintiff cites the case of *Austin* v. *Ahearne* (61 N. Y. 6), wherein the court quotes from Coote's Treatise on Mortgages the rule as to an attornment between the tenant (of a mortgagor subsequent to the mortgage) threatened with an eviction, and the mortgagor, as follows: "The mortgagee may annul the lease, or or he may *confirm the tenancy. Any act demonstrating approbation of the demise will be evidence of confirmation.*"

From this it appears clearly that a mere act of the tenant looking to attornment is not sufficient, but that there must also be a confirmation by the landlord of the new relationship between the tenant and the substituted landlord under the terms of the existing lease. Likewise, in the case of *Holly Realty Co.* v. *Wortmann* (121 N. Y. Supp. 572), the court predicated its decision upon the theory that it is within the power of the purchaser either to remove the defendant and disavow the lease, or to accept and ratify it, "and when thus ratified it would become valid and effectual for every purpose. (*Anderson* v. *Conner*, 43 Misc. 384; 87 N. Y. Supp. 449.)" The court quotes from the opinion of Mr. Justice Scott in the *Anderson* case to the effect that an attornment is accomplished when there is a recognition and reaffirmation of the tenant's lease on the part of both the tenant and the landlord.

On August 12, 1929, the defendant wrote to the plaintiff that under the terms of his lease the landlord was obligated to redecorate his entire apartment in 1930, and inasmuch as his family was then intending to go to the country and leave the apartment unoccupied for three months, he desired to have his entire apartment redecorated during that time, instead of the following year, as required by the lease, and he further stated that if this were done he would release the landlord from the obligation of doing the painting in 1930, and furthermore, in order to compensate the landlord for making the expenditure for the decorating a year ahead, he was willing to pay the third year's rent in advance. To this letter the plaintiff replied as follows:

"Receipt is acknowledged of your letter of the 12th instant and contents noted relative to the apartment you occupy in the above building. We wish to advise that we are not willing to do any decorating in your apartment at the present time.

"Very truly yours,
"MONTDALE HOLDING CORP."

Even if the plaintiff was unwilling to do the decorating, there was ample opportunity for the plaintiff in this letter to indicate its recognition of the defendant's continued tenure into the year 1930 and for two years subsequent thereto, by reason of the defendant's letter of February 27, 1929. The letter, on the contrary, seems to studiously refrain from extending any such recognition to the defendant's tenure beyond the two-year term of the lease which was saved to the defendant by the judgment in the foreclosure action. This court cannot accept the plaintiff's contention that the refusal in this letter to decorate defendant's apartment " at the present time " constitutes by implication a promise to do the decorating at some later time, presumably in 1930. Nor is it easy to understand why the plaintiff should have refused the defendant's reasonable request to serve his convenience by decorating the apartment in 1929, when he offered at the same time to pay the plaintiff a year's rent in advance, which would, of course, more than amply put the plaintiff in pocket for the advance expenditure, unless it was that the plaintiff had not yet decided whether it was to its best advantage to accept the defendant's proposition in his letter of February 27, 1929, or to stand on its rights under the terms of the judgment in foreclosure.

It follows that judgment must be rendered for the defendant dismissing the complaint upon the merits, with costs to the defendant.